FILED & ENTERED

SEP 25 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY huerta     DEPUTY CLERK

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 2:12-bk-26473-PC |
| J.T. THOMPSON, USA, | ) ) | Chapter 7 |
| | ) ) | **MEMORANDUM DECISION** |
| | ) ) ) ) ) | Date:  September 17, 2012<br>Time:  9:30 a.m.<br>Place: U.S. Bankruptcy Court<br>           Courtroom # 1468 |
| Debtor. | ) ) ) | 255 East Temple Street<br>Los Angeles, CA  90012 |

Before the court is the Amended First and Final Application for Compensation and Reimbursement of Expenses ("Application") of the Law Offices of Vincent W. Davis ("Davis"), counsel for J.T. Thompson, USA ("Thompson"), the debtor and former debtor in possession in the above referenced case.  The United States trustee ("UST") and Alberta P. Stahl, Chapter 7 Trustee ("Stahl"), object to allowance and payment of the compensation sought by Davis in the Application.  Having considered the Application, the objections thereto, and the argument of

1

counsel, the court makes the following findings of fact and conclusions of law[1] pursuant to F.R.Civ.P. 52(a)(1), as incorporated into FRBP 7052 and applied to contested matters by FRBP 9014(c).

## STATEMENT OF FACTS

On May 9, 2012, Thompson filed a voluntary petition under chapter 11 of the Bankruptcy Code[2] in the above referenced case. Thompson's petition was signed by Chin-Ming Tsai, Sr. ("Tsai"), as President and CEO of the corporation.[3] Thompson's petition was accompanied by a verified creditor matrix, but was devoid of schedules, statements and other requisite documents. On May 23, 2012, Thompson filed a Summary of Schedules, Schedules A through H, Statement of Financial Affairs, Statement of Related Cases, and a Disclosure of Compensation of Attorney for Debtor ("Rule 2016(b) Disclosure"). The information contained in Thompson's schedules was conflicting and incorrect.

Thompson's schedules named creditors that were not identified on the verified creditor matrix originally filed with the court. In Schedule A, Thompson listed as one of its only two significant assets the real property at 17053 Foothill, Blvd., Fontana, California ("Foothill Property"), valued at $1,006,732. In Schedule D, Thompson disclosed Royal Business Bank as the holder of a claim in the amount of $1,222,286 secured by an "interest" in vacant land in Fontana, California – presumably the Foothill Property. Thompson then valued the property in Schedule D at $1,000,000. Thompson disclosed its other significant asset in Schedule B(16) as

---

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

[2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

[3] Thompson's officers are Tsai (father), President and CEO; Pao Ching Tsai (mother), Chief Financial Officer; and Chieh Lin Tsai (son), Secretary. Tsai is the sole shareholder of Thompson.

2

ownership of an account receivable in the amount of $112,784.  The disclosure contained the following notation: "Amount of cash is "frozen" by state court order[.]  See Mei Yun Yang v. J.T. Thompson USA, et al[.,] Case No. GC 049025[,] Superior Court of California[,] County of Los Angeles."  Tsai signed Thompson's schedules and statements under penalty of perjury.

At a status conference on July 11, 2012, the court learned that the Foothill Property was not owned by Thompson, but by Foothill, LLC -- a limited liability company in which Thompson owned a 40% interest.  The court also learned that the $112,784 account receivable was, in fact, funds on deposit in an account at East West Bank attributable to the sale of certain real property owned by San Gabriel Senior Garden, LLC ("SGSG") – a limited liability company in which Thompson owned a 35% interest.  Thompson was prohibited from withdrawing the funds by a "Temporary Protective Order" entered in Case No. GC049025, styled <u>Yang v. J.T. Thompson, USA, et al.</u>, in the Superior Court of California, County of Los Angeles pending an adjudication of disputed claims to the funds among the SGSG interest holders.

Thompson's bankruptcy petition was filed primarily to stay the state court litigation and essentially to collaterally attack the Temporary Protective Order.  Thompson opposed a motion by Mei Yun Yang, Tsai's sister and the plaintiff in the state court action, seeking relief from the stay to continue the lawsuit.  Thompson also filed a complaint in Adversary No. 2:12-ap-01796-PC, <u>J.T. Thompson USA v. East West Bank, et al.</u>, seeking to compel a turnover of the funds and to secure an injunction against further litigation of the state court action against Thompson's principals, Tsai, Pao Ching Tsai, and Chieh Lin Tsai, pursuant to § 105(a).  The court also learned at the status conference that Thompson was essentially an investment vehicle for the Tsai family.  Thompson had no employees other than its principals, no other significant real or personal property, and no business plan.  Thompson had not filed an operating report since the commencement of the case, and the creditors' meeting had not been conducted because Tsai, who has resided in Taiwan since 2011, was too ill to attend a creditors' meeting and personally respond to questions under oath regarding the petition, schedules and statements that he signed and filed with the court on behalf of the corporation.

At the status conference, the court also inquired about disclosures made by Davis

pursuant to FRBP 2016(b). In its Rule 2016(b) Disclosure, Davis certified that the firm (1) had not received any compensation for legal services rendered, or to be rendered on behalf of Thompson in contemplation of or in connection with the bankruptcy case; (2) had agreed to accept no compensation for such services; and (3) that the balance due on the date of bankruptcy for such services was zero. However, in Thompson's original application to employ Davis as its counsel filed on June 28, 2012, Vincent W. Davis, the principal of the firm, stated under penalty of perjury that the firm had "received a retainer of $40,000.00 which said funds were deposited into the Firm's Trust Account."[4] The fee agreement between Davis and Thompson dated May 1, 2012, was attached as Exhibit B to the original employment application. It provided, in pertinent part, that Thompson would pay a retainer of $25,000, plus the court filing fee of $1,048, upon execution of the agreement, and an additional retainer of $15,000 not later than May 8, 2012.[5]

In response to the court's inquiry regarding its Rule 2016(b) Disclosure, Artin T. Derohanian ("Derohanian"), who appeared for Thompson on behalf of the Davis firm, initially stated that the firm had not, to his knowledge, received any retainer prior to the filing of the petition. When it was pointed out that Davis had disclosed receipt of a $40,000 prepetition retainer in a declaration in support of Thompson's original employment application, Derohanian responded that Davis had not received a $40,000 prepetition retainer, but had in fact received a $25,000 retainer prior to the filing of the petition and intended to seek an additional $15,000 retainer at a later date. In response to further inquiry by the court and the UST, and after conferring with a Thompson representative, Derohanian then represented that his firm had, in fact, received a $40,000 prepetition retainer.

At the conclusion of the status conference, the court converted the case to a case under chapter 7 pursuant to § 1112(b). An Order Converting Case to a Case Under Chapter 7 was entered on July 11, 2012, and Stahl was appointed as trustee.

On July 26, 2012, Thompson filed an amended application to employ Davis as its

---

[4] Application of Debtor and Debtor-In-Possession for Authority to Employ the Law Offices of Vincent W. Davis as General Counsel, 11:20-21.

[5] Id. at 18.

4

counsel. In a declaration filed in support of the amended application, Vincent W. Davis stated under penalty of perjury that the firm received a $25,000 retainer prior to bankruptcy and that the additional $15,000 retainer referenced in the fee agreement with Thompson was never paid.[6] The court did not receive an objection to the amended employment application. An order authorizing Thompson to employ Davis as its general counsel ultimately was entered on August 13, 2012, effective May 9, 2012.[7]

In its Application, Davis seeks final allowance and payment of $22,725 in fees for 108.45 hours of legal services rendered to Thompson, at a blended hourly rate of $209.54, between May 9, 2012 and August 14, 2012. Davis also seeks reimbursement of expenses in the amount of $1,803.55, for a total of $24,528.55. Davis states in the Application that it received a $25,000 retainer from Thompson's operating account prior to bankruptcy, that the sum of $2,275 was deducted from its retainer on the petition date for actual prepetition services, and that the balance of the retainer held in its client trust account is, coincidentally, $22,725.

Stahl objects to allowance of the full amount sought, arguing that the sum of $6,527 in services rendered by Davis should be disallowed because they were either calculated to benefit Thompson's principals, not the estate, at the time the services were rendered or the services were not performed in a reasonable amount of time commensurate with the complexity of the tasks performed. The UST objects to the allowance of any fees or expenses to Davis given the conflicting disclosures regarding the nature and amount of the retainer received by the firm. Alternatively, the UST argues that lumped time entries and billing irregularities warrant a reduction in the amount sought of $5,862.50.

## DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue

---

[6] Amended Application of Debtor and Debtor-in-Possession for Authority to Employ the Law Offices of Vincent W. Davis as General Counsel, 9:19-26.

[7] Davis filed its original final fee application on August 7, 2012 – 6 days before Thompson obtained authorization to employ the firm as its general counsel.

is appropriate in this court.  28 U.S.C. § 1409(a).

### A.  Duties of a Chapter 11 Debtor in Possession and its Counsel

By virtue of § 1107(a), a chapter 11 debtor in possession stands in the shoes of a trustee and is a fiduciary for the estate and its creditors.  See, e.g., Thompson v. Margen (In re McConville), 110 F.3d 47, 50 (9th Cir. 1997) (stating that chapter 11 debtors in possession "were fiduciaries of their own estate owing a duty of care and loyalty to the estate's creditors"), cert. denied, 522 U.S. 966 (1997); Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 614 (9th Cir. 1988) ("As debtor in possession he is the trustee of his own estate and therefore stands in a fiduciary relationship to his creditors" (footnote omitted)); Devers v. Bank of Sheridan, Montana (In re Devers), 759 F.2d 751, 754 (9th Cir. 1985) ("A debtor-in-possession has the duty to protect and conserve property in his possession for the benefit of creditors").  When the debtor is a corporation, the debtor in possession's fiduciary obligations to the corporation, its creditors and shareholders, fall upon the officers and directors.  See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985) (stating that "the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession"); Holta v. Zerbetz (In re Anchorage Nautical Tours, Inc.), 145 B.R. 637, 643 (9th Cir. BAP 1992) ("When the debtor is a corporation, corporate officers and directors are considered to be fiduciaries both to the corporate debtor in possession and to the creditors.").

Corporate officers, as fiduciaries, must protect and preserve estate assets held in trust for the benefit of creditors.  Holta, 145 B.R. at 643.  In this regard, the Ninth Circuit holds the debtor in possession's corporate officers to the standards of "officers of the court because of their responsibility to act in the best interests of the estate as a whole and the accompanying fiduciary duties."  Gumport v. China Int'l Trust & Inv. Corp. (In re Intermagnetics Am., Inc.), 926 F.2d 912, 917 (9th Cir. 1991); see York Int'l Building, Inc. v. Chaney (In re York Int'l Building, Inc.), 527 F.2d 1061, 1068 (9th Cir. 1975) (noting that special masters administering bankruptcy estates "are not acting as private persons, but as officers of the court").

The majority of courts view an attorney for a debtor in possession as a fiduciary of the bankruptcy estate. See, e.g., Brown v. Gerdes, 321 U.S. 178, 182 (1944) ("In all cases persons who seek compensation for services or reimbursement for expenses are held to fiduciary standards."); In re Taxman Clothing Co., 49 F.3d 310, 314 (7th Cir. 1995) ("A lawyer hired by a trustee in bankruptcy to do legal work for the estate, like the trustee himself, is a fiduciary of the estate."); Continental Ill. Nat'l Bank & Trust Co. of Chi. v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.), 890 F.2d 1312, 1323 (5th Cir. 1989) (stating that "trustees and attorneys for trustees are held to high fiduciary standards of conduct"); Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.), 785 F.2d 1249, 1256 n.7 (5th Cir. 1986) (observing that "court-appointed attorneys are officers of the court and fiduciaries"); In re Consupak, Inc., 87 B.R. 529, 548 (Bankr. N.D. Ill. 1988) (observing that "the fiduciary duties of counsel for a bankruptcy trustee have been held to be 'equivalent' to those of the trustee"). An attorney for the debtor in possession has fiduciary obligations to the estate stemming from his fiduciary duties to the debtor in possession and his responsibilities as an officer of the court. See ICM Notes, Ltd v. Andrews & Kurth, L.L.P., 278 B.R. 117, 125-26 (S.D. Tex. 2002). These obligations exist and must be discharged whether or not a creditors' committee or the United States trustee is actively involved in the case. In re Count Liberty, Inc., 370 B.R. 259, 281 (Bankr. C.D. Cal. 2007). If the attorney and client disagree, counsel must refrain from filing bad faith or frivolous pleadings and ultimately withdraw if the high standard for withdrawal is met. See Everett v. Perez (In re Perez), 30 F.3d 1209, 1219 (9th Cir. 1994).[8]

---

[8] In Perez, the Ninth Circuit explained:

> Counsel for the estate must keep firmly in mind that his client is the estate and not the debtor individually. Counsel has an independent responsibility to determine whether a proposed course of action is likely to benefit the estate or will merely cause delay or produce some other procedural advantage to the debtor. While he must always take his directions from his client, where counsel for the estate develops material doubts about whether a proposed course of action in fact serves the estate's interests, he must seek to persuade his client to take a different course or, failing that, resign. Under no circumstances, however, may the lawyer for a bankruptcy estate pursue a course of action, unless he has determined in good

7

B. Strict Requirements for Disclosure

Section 329(a) requires a debtor's attorney to disclose to the court the amount of compensation paid or promised for services rendered "in contemplation of or in connection with the case."[9] Section 329(a) is implemented by Rule 2016(b) which requires the filing of the statement required by § 329(a) not later than 14 days after the order for relief.[10] Rule 2016(b) imposes a continuing duty on debtor's counsel to supplement the original statement pursuant to § 329(a). The disclosure requirements of § 329(a) apply "whether or not the attorney ever applies for compensation . . . ." Consumer Seven Corp. v. United States Trustee (In re Fraga), 210 B.R. 812, 822 (9th Cir. BAP 1997).

---

faith and as an exercise of his professional judgment that the course complies with the Bankruptcy Code and serves the best interests of the estate.

Id.

[9] Section 329(a) states:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a).

[10] Rule 2016(b) provides:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

FRBP 2016(b).

8

Rule 2017(a) directs the court to determine, either <u>sua sponte</u> or upon motion by a party in interest, whether any payment or transfer of property to an attorney "in contemplation of" the filing of the bankruptcy petition is excessive.[11]  Taken together, § 329(a) and Rule 2017(a) "furnish the court with express power to review payments to attorneys for excessiveness and to restore the status quo when assets have improvidently been bartered for legal services[.]"  <u>In re Martin</u>, 817 F.2d 175, 180 (1st Cir. 1987).

Section 329's disclosure requirements are "'mandatory, not permissive.'"  <u>Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.)</u>, 4 F.3d 1556, 1565 (10th Cir. 1993) (quoting <u>In re Bennett</u>, 133 B.R. 374, 378 (Bankr. N.D. Tex. 1991)); <u>In re Keller Fin. Servs. of Fla., Inc.</u>, 248 B.R. 859, 883 (Bankr. M.D. Fla. 2000).  Section 329(a) demands that an attorney be forthright in disclosing "the precise nature of the fee arrangement" with the debtor.  <u>Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)</u>, 63 F.3d 877, 881 (9th Cir. 1995) (quoting <u>In re Glenn Elec. Sales Corp.</u>, 99 B.R. 596, 600 (D.N.J. 1988).  "Counsel's fee revelations must be direct and comprehensive.  Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient."  <u>In re Saturley</u>, 131 B.R. 509, 517 (Bankr. D. Me. 1991).

Congress intended to permit bankruptcy courts to reexamine the reasonableness of fees within the one-year look back period, irrespective of the nature of the services rendered.  <u>See Keller Fin. Servs.</u>, 248 B.R. at 878 (concluding that § 329 permits the court to review fees paid for services "performed at a time when the debtor was contemplating bankruptcy," regardless of

---

[11] Rule 2017(a) states, in pertinent part:

> On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

FRBP 2017(a).

the nature of the services (internal quotations omitted)); Wooton v. Dixon (In re Dixon), 143 B.R. 671, 678 (Bankr. N.D. Tex. 1992) (stating that § 329 "imposes no restriction on the nature of the services rendered . . ."); In re Rheuban, 121 B.R. 368, 378 (Bankr. C.D. Cal. 1990) (observing that § 329 does not limit the nature of the legal services that are subject to reexamination). Absent complete disclosure, the court is unable to make an informed judgment regarding the nature and amount of compensation paid or promised by the debtor for legal services in contemplation of bankruptcy.

The failure to satisfy the disclosure requirements of § 329(a) and Rule 2016(b) may result in sanctions, "even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." Park-Helena Corp., 63 F.3d at 880; Fraga, 210 B.R. at 822. An attorney who violates § 329(a) and Rule 2016(b) forfeits any right to receive compensation for services rendered on behalf of the debtor and may be ordered to disgorge fees already received. See, e.g., Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis), 113 F.3d 1040, 1045 (9th Cir. 1997) (concluding that "[a]n attorney's failure to obey the disclosure and reporting requirements of the Bankruptcy Code and Rules gives the bankruptcy court the discretion to order disgorgement of attorney's fees"); Park-Helena Corp., 63 F.3d at 882 ("Even a negligent or inadvertent failure to disclose fully relevant information [in a Rule 2016 statement] may result in a denial of all requested fees."); Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.), 210 B.R. 844, 849 (10th Cir. BAP 1997) (stating that an attorney's failure to disclose a retainer in his Rule 2016(b) statement is sufficient to deny all fees, even if the non-disclosure was negligent or inadvertent); Fraga, 210 B.R. at 822 ("The consequences of an attorney's violation of the disclosure requirements regarding fees include denial of all fees requested.").

    C. Davis Violated the Disclosure Requirements of Section 329(a) and Rule 2016(b).

Section 329(a) and Rule 2016(b) required that Davis's disclosures be full, candid, accurate and complete. Davis timely filed a Rule 2016(b) Disclosure in this case, but failed to disclose fully and candidly the precise nature its fee agreement with Thompson and the amount of the retainer received prior to bankruptcy. Davis certified in its Rule 2016(b) Disclosure that

the firm (1) had not received any compensation for legal services rendered, or to be rendered on behalf of Thompson in contemplation of or in connection with the bankruptcy case; (2) had agreed to accept no compensation for such services; and (3) that the balance due on the date of bankruptcy for such services was zero.  That statement was false.  Davis had, in fact received at least a $25,000 retainer prior to bankruptcy, and had deducted the sum of $2,275 from its retainer as compensation for pre-petition services rendered to Thompson in contemplation of or in connection with its bankruptcy case.  Davis did not correct or supplement its Rule 2016(b) Disclosure until after the court reminded Davis of the strict requirements of FRBP 2016(b) at the status conference on July 11, 2012, and the case converted to chapter 7.  Davis also presented false information regarding the retainer in its original employment application, stating under penalty of perjury that it had received a $40,000 retainer from Thompson prior to bankruptcy. Davis then compounded the inaccurate disclosures by conflicting representations at the status conference on July 11, 2012, at which Derohanian (1) initially stated that the firm had not, to his knowledge, received any pre-petition retainer; (2) then stated that Davis had not received a $40,000 prepetition retainer, but had in fact received a $25,000 retainer prior to the filing of the petition and intended to seek an additional $15,000 retainer at a later date; and (3) then stated that Davis had, in fact, received a $40,000 prepetition retainer when it had not.

An attorney who neglects to satisfy the disclosure requirements of § 329(a) and Rule 2016(b), whether willfully or inadvertently, forfeits any right to receive compensation for services rendered on behalf of the debtor and may be ordered to return fees already received. See, e.g., Lewis, 113 F.3d at 1045 ("An attorney's failure to obey the disclosure and reporting requirements of the Bankruptcy Code and Rules gives the bankruptcy court the discretion to order the disgorgement of attorney's fees."); Keller Fin. Servs., 248 B.R. at 885 ("There are no measurable damages which result from the non-disclosure of compensation required by § 329"). Given the gravity of Davis's non-disclosure, the court will deny all fees to Davis for legal

services rendered to Thompson after the petition date due to its failure to comply with § 329(a) and Rule 2016(b).[12]

## CONCLUSION

For the reasons stated, the objections of Stahl and the UST to the Application will be sustained. Davis's request for final allowance and payment of $22,725 in fees, plus $1,803.55 in

---

[12] In reaching its conclusion, the court makes no finding as to the reasonableness of the fees sought by Davis for legal services rendered on behalf of Thompson after the filing of the petition. See, e.g., Lewis, 113 F.3d at 1046 (holding that where non-disclosure results in an order for disgorgement of all fees, an inquiry into the appropriate amount of the fee is not required); In re Perrine, 369 B.R. 571, 586 (Bankr. C.D. Cal. 2007) (denying all fees to debtor's counsel for legal services rendered to the petition date due to the failure to disclose a transfer of property received as payment for legal services). If the court were to reach the merits of Davis's compensation request, the court would likely deny final allowance of the fees and expenses sought in the Application for the following reasons. Under § 329(b), Davis bore the burden of establishing the reasonableness of its fees. Hale v. United States Trustee (In re Basham), 208 B.R. 926, 931-32 (9th Cir. BAP 1997) (stating that "[t]he burden is on the applicant to demonstrate that the fees are reasonable"). As pointed out by the UST, the Application contains lumped or vague time entries making it difficult for the court to determine whether there was an unnecessary duplication of services or whether the services were performed within a reasonable amount of time commensurate with the difficulty of the issue or task addressed. More importantly, the court agrees with Stahl and the UST that the Application requests compensation for services that were either (1) not necessary to the administration of, or beneficial at the time at which the services were rendered, toward the completion of the case, or (2) calculated to benefit Tsai and his family, not the estate. For instance: (1) much of the relevant information contained in the schedules, statements and other documents prepared by Davis for Thompson and filed in the case on May 23, 2012, was either conflicting, inaccurate or both; (2) Davis's Rule 2016(b) Disclosure filed on May 23, 2013, contained false information; (3) the complaint prepared by Davis and filed in Adversary No 2:12-ap-01796-PC on June 14, 2012, was filed primarily for the benefit of Tsai and his family, not Thompson, to stay the state court litigation and obtain collateral relief from the Temporary Protective Order issued by the state court; (4) Thompson's original application to employ Davis filed on June 28, 2012, contained false information, was not granted, and resulted in no benefit to the estate; (5) the response in opposition to Yang's motion for relief from the automatic stay was prepared by Davis and filed on June 28, 2012, for the benefit of Tsai and his family, not the Debtor, primarily to stop Yang's legitimate efforts to have the state court adjudicate the disputed rights of Yang and other SGSG interest holders to the funds sequestered at East West Bank; and (6) Davis's original application for compensation was filed at a time when Davis's employment had not been authorized, was not granted, and resulted in no benefit to the estate.

expenses will be denied, and Davis will be ordered to disgorge and turn over to Stahl the balance of its retainer in the amount of $22,725 for the benefit of the estate. A separate order will be entered consistent with this memorandum.

### 

DATED: September 25, 2012

United States Bankruptcy Judge

13

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **MEMORANDUM DECISION** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **09-25-2012**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Vincent W Davis    v.davis@vincentwdavis.com
- Clifford P Jung    clifford@jyllp.com, info@jyllp.com
- Tom F Y King    tfyk@sbcglobal.net
- Kenneth G Lau    kenneth.g.lau@usdoj.gov
- Alberta P Stahl (TR)    trusteestahl@earthlink.net, astahl@ecf.epiqsystems.com;trusteestahl\;\;\;.net@cacbapp.cacb.circ9.dcn
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- James S Yan    jsyan@msn.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

14